```
IN THE UNITED STATES DISTRICT COURT
    FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```
_____

| | |
|---|---|
| **VIRGINIA SANDERS,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    No. 14-cv-2414-SHL-tmp |
| | ) |
| **BAPTIST MEMORIAL HOSPITAL,** | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

_____

### REPORT AND RECOMMENDATION
_____

Before the court is the Motion for Summary Judgment filed by defendant Baptist Memorial Hospital ("Baptist") on June 30, 2015. (ECF No. 74.) Plaintiff Virginia Sanders filed responses in opposition on July 10 and July 30. (ECF Nos. 77 & 80.) Baptist filed a reply on July 24. (ECF No. 79.) For the reasons below, it is recommended that Baptist's motion be granted.

### I. PROPOSED FINDINGS OF FACT

As an initial matter, Baptist submitted a statement of undisputed material facts along with its Motion for Summary Judgment. (ECF No. 74-2.) Sanders, however, failed to respond as provided by the Local Rules of this court. The Local Rules provide the following:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

Local Rule 56.1(b). In response to Baptist's motion and statement of undisputed facts, Sanders submitted two responses, totaling 4 pages, in narrative form. Because Sanders failed to respond as provided by the Local Rules, the court will consider the facts set forth in Baptist's statement of undisputed material facts as being undisputed. See Lee v. Swift Transp. Co. of Ariz., LLC, No. 2:12-cv-02230-JTF-tmp, 2014 WL 897407, at *2 (W.D. Tenn. Mar. 6, 2014) ("Moreover, [plaintiff's] statement does not comply with Local Rule 56.1(b) . . . Therefore, the court will rely on Defendant's Statement of Material Facts in deciding the instant motion."); Iqbal v. Pinnacle Airlines,

Inc., 802 F. Supp. 2d 909, 914-15 (W.D. Tenn. 2011) (deeming as undisputed facts to which plaintiff did not respond as required by the local rules); Goodbar v. Technicolor Videocassette of Mich., Inc., No. 09-2553, 2010 WL 5464796, at *2 n.5, 6 (W.D. Tenn. Dec. 30, 2010); Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007); U.S. Liability Ins. Co. v. NTR, Inc., No. 06-2159B/A, 2007 WL 1461660, at *1 n.1 (W.D. Tenn. May 16, 2007); Thornton v. Fed. Express Corp., No. 05-2247, 2007 WL 188573, at *2 n.2 (W.D. Tenn. Jan. 22, 2007).

Sanders is an African-American female who, during the events of June 2013 at issue in this lawsuit, was either 48 or 49 years old.[1] Baptist hired Sanders to work as an Administrative Unit Coordinator ("AUC") on or around October 24, 1994. (Dep. of Virginia Sanders 60-61.) As an AUC, Sanders was required to transcribe doctor's orders, coordinate the flow of the floor, order supplies, answer the phone, make appointments, assist nurses with noninvasive patient care tasks, answer call lights, and alert nurses and Patient Care Assistants ("PCA") when a patient's call light had been activated. (Sanders Dep. 61.) Sanders remained in the same position throughout her employment with Baptist, although the title of the job was

---

[1]Sanders's complaint does not state her age. However, she indicated on her two applications to proceed *in forma pauperis* that she was 50 years old at the time of filing (June 2 and June 30, 2014). (ECF Nos. 2 & 6.) Thus, the court deduces that Sanders was either 48 or 49 during June of 2013.

changed to Health Unit Coordinator ("HUC") when Baptist changed its computer systems at some point. (Sanders Dep. 62.)

On June 14, 2013, Sanders was working on Five North Post-Op Surgery on the fifth floor at Baptist. (Sanders Dep. 69-70.) Sanders's immediate supervisor that day was Charge Nurse Lula Lofton. (Sanders Dep. 70, 137.) Dale Neil was also working on the shift as a PCA.[2] (Sanders Dep. 41, 70.) During the course of the shift, Lofton asked Sanders to page the PCAs to have them check patient call lights. (Sanders Dep. 71-74.) Sanders sent the page as requested. (Sanders Dep. 74.) Upon receiving the page, Neil approached Sanders, who was sitting at a desk at a nurses' station located close to patients' rooms. (Sanders Dep. 75-76.) She asked Sanders, "What does check your call lights mean?", to which Sanders replied "Dale, check your call lights means to check your call lights." (Sanders Dep. 75, 85-87.) Neil walked away from the desk and made a gesture, which Sanders interpreted to be a non-verbal signal meaning "kiss my behind." (Sanders Dep. 75, 87.) Sanders then told her, "I don't have to kiss your behind" or words to that effect. (Sanders Dep. 87-88.) Neil turned around and approached Sanders with clenched

---

[2]Baptist indicates in its statement of undisputed facts that Lofton and Neil, as well as Nurse Manager Latonia Green (who investigated the incident at issue in this lawsuit), are all African-American women in their mid-forties or older.

fists, at which point Sanders said "let's take it outside" and stood up. (Sanders Dep. 75-76, 87-89.)

Subsequently, Sanders went down the hall to another nurses' station and called security. (Sanders Dep. 76.) Sanders, Neil, and Lofton then walked to a conference room away from patients' rooms to discuss the matter. (Sanders Dep. 77.) When the security officers inquired about the incident, Lofton stated that she "didn't have anything to do with this" and left the conference room. (Sanders Dep. 77-78.) The security officers left the room to confer and returned shortly thereafter, telling Sanders and Neil that management would have to address the matter. (Sanders Dep. 78.) Sanders then returned to her work area, at which time Lofton asked Sanders to come to Lofton's office. (Sanders Dep. 78-79.) When Sanders arrived at Lofton's office, Neil was already seated across from Lofton's desk. (Sanders Dep. 79.) Lofton asked Neil and Sanders to complete a written statement of what had occurred. (Decl. of Holly Turner ¶ 4.) However, Sanders did not complete a written statement before leaving for the day. (Sanders Dep. 89.)

Nurse Manager Green conducted the investigation into the altercation between Sanders and Neil. (Sanders Dep. 116-17.) On the afternoon of June 14, 2013, Green called Sanders asking her to submit a written statement and told Sanders that she could not return to work until she had done so. (Turner Decl.

Attachment 3; Sanders Dep. 81-82.) As part of the investigation, Lofton and Neil submitted written statements to Green on June 14, 2013. (Turner Decl. ¶¶ 3-4.) Sanders did not submit a written statement at any time from Friday, June 14 through Monday, June 17, 2013.[3] (Sanders Dep. 80-85, 90-92.) On the afternoon of June 17, 2013, Green called Sanders and asked her to come to Baptist the following day, June 18. (Sanders Dep. 83-84.) When Sanders arrived at Baptist on June 18, Green terminated Sanders for her role in the altercation with Neil and for her refusal to provide a written statement as requested. (Turner Decl. Attachment 4.)

On December 26, 2013, Sanders filed a charge of race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and of age discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") with the Equal Employment Opportunity Commission ("EEOC"). Sanders received a

---

[3]Sanders alleges that, on Monday, June 17, 2013, she notified Human Resources Manager Anne Norton that she had a written statement to submit. (Sanders Dep. 82-83.) Norton allegedly told Sanders to bring the statement in the following day, June 18. (Sanders Dep. 83.) When Sanders arrived to meet with Green on June 18, she allegedly had the written statement in her possession, but did not give a copy of it to Green or notify Green that she had completed a statement. (Sanders Dep. 93-94.) Sanders did not submit any written statement until June 20, when she gave it to Norton as part of Baptist's internal problem-solving process through which Sanders appealed her termination. (Decl. of Anne Thompson ¶ 4.)

Notice of Right to Sue from the EEOC on April 17, 2014, and the instant suit was filed *pro se* on June 2, 2014.

## II. PROPOSED CONCLUSIONS OF LAW

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to

summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Palmer, 429 F. App'x at 495 (quoting Anderson, 477 U.S. at 251–52).

**B.   Title VII Race Discrimination Claim**

Baptist first argues that it is entitled to summary judgment on Sanders's Title VII race discrimination claim. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff who does not have direct evidence of race discrimination can establish a *prima facie* case by demonstrating that (1) he or she is a member of a protected class; (2) he or she was qualified for the job and performed it satisfactorily; (3) despite his or her qualifications and performance, he or she suffered an adverse employment action; and (4) he or she was replaced by a person outside the protected class or was treated differently than similarly-situated non-protected employees. See also Aquino v. Honda of America, Inc., 158 F. App'x 667, 674 (6th Cir. 2005).

Once a plaintiff establishes his or her *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Wade v. Knoxville Utils. Bd., 259 F.3d 452, 461 (6th Cir. 2001). If an employer offers a legitimate, non-discriminatory reason for its actions, the plaintiff must then produce sufficient evidence that the employer's reasons were pretextual. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). A plaintiff can rebut a defendant's legitimate, nondiscriminatory reason "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003) (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)). The Sixth Circuit has explained that on a motion for summary judgment, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." Risch v. Royal Oak Police Dep't, 581 F.3d 383, 390-91 (6th Cir. 2009) (internal quotation marks and citations omitted).

In this case, Baptist does not dispute that Sanders is a member of a protected class due to her race or that she suffered an adverse employment action. Baptist argues, however, that Sanders cannot establish a *prima facie* case because she cannot

show that she was replaced by someone outside of her protected class or that a similarly-situated, non-protected employee was treated differently. Additionally, Baptist argues that Sanders cannot demonstrate that Baptist's reasons for terminating her were pretextual.

Viewing the evidence in a light most favorable to Sanders, as the nonmoving party, the court submits that no reasonable juror could find that she has satisfied her *prima facie* case, because she has not identified a similarly-situated, non-protected employee who was treated differently. In her complaint, Sanders alleges that a white co-worker, later identified in Sanders's deposition as Nicole Foster, was allowed to resign in lieu of termination after Foster incurred multiple attendance infractions. (Sanders Dep. 100-01, 103-04, 140-41.) Foster, however, is not a proper comparator in this case. The Sixth Circuit has held that for Title VII purposes, "the plaintiff [must] demonstrate that he or she is similarly-situated to the [claimed comparator] in all relevant respects" and that the plaintiff and the claimed comparator engaged in acts of "comparable seriousness." <u>Martinez v. Cracker Barrel Old Country Store, Inc.</u>, 703 F.3d 911, 917 (6th Cir. 2013) (alterations in original) (quoting <u>Wright</u>, 455 F.3d at 710). "To make this assessment, a court must look to certain factors, such as whether the individuals have dealt with the same

supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Wright, 455 F.3d at 710) (internal quotation marks omitted).

Here, Foster had received a final written warning for her attendance violations, but never violated the terms of the warning during her employment, and thus, was not subject to termination. (Turner Decl. ¶ 8.) Instead, Foster resigned to return to nursing school. (Turner Decl. ¶ 7.) Sanders, on the other hand, got into a verbal altercation with a co-worker while at work and subsequently failed to provide a written statement regarding the incident, which led to her termination. (Sanders Dep. 75-85, 89-92; Turner Decl. ¶ 3-4, 6.) Based on these undisputed facts, Sanders has not sufficiently demonstrated that she is similarly-situated to Foster "in all relevant aspects," or that she and Foster engaged in the same conduct or in acts of "comparable seriousness." Martinez, 703 F.3d at 917 (quoting Wright, 455 F.3d at 710); see, e.g., Wright, 455 F.3d at 710-11 (holding that plaintiff, who allegedly engaged in sexual harassment, was not similarly-situated to employee who violated company policy by allowing unauthorized person onto company grounds and by spreading rumors about plaintiff). Because the court concludes that no reasonable juror could find that Sanders

was treated differently than a similarly-situated, non-protected employee, the court recommends that Baptist's Motion for Summary Judgment be granted as to Sanders's Title VII claim.

**C.   ADEA Claim**

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." Brooks v. Davey Tree Expert Co., 478 F. App'x 934, 940 (6th Cir. 2012) (quoting Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 811 (6th Cir. 2011)). "Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age was the 'but-for' cause of their employer's adverse action.'" Provenzano, 663 F.3d at 811 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)).

Because Sanders has not presented direct evidence of age discrimination, the court must consider whether she has sufficiently presented circumstantial evidence of discrimination by analyzing her claim under the familiar burden-shifting framework set forth in McDonnell Douglas. Under the McDonnell Douglas framework, plaintiffs can establish a *prima facie* case

by showing they were 1) at least forty years old at the time of the alleged discriminatory act; 2) qualified for the position; 3) subject to an adverse employment action; and 4) replaced by a substantially younger person or treated differently than a similarly-situated, non-protected employee. Stewart v. Kettering Health Network, 576 F. App'x 518, 521 (6th Cir. 2014) (citing Blizzard v. Marion Technical Coll., 698 F.3d 275, 283 (6th Cir. 2012)). "A 'substantially younger' person is someone more than six years younger than the plaintiff." Johnson v. Lockheed Martin Corp., 598 F. App'x 364, 368 (6th Cir. 2015) (citing Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003)). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Schoonmaker v. Spartan Graphics Leasing LLC, 595 F.3d 261, 264 (6th Cir. 2010). If the defendant offers a non-discriminatory reason for its action, the burden of production returns to the plaintiff to demonstrate that the defendant's proffered reasons are merely pretextual, and that he or she was in fact subjected to the adverse action because of his or her age. Id.

As mentioned above, Sanders does not mention her age in her complaint, nor does Baptist mention Sanders's age in any of its responsive pleadings. Even accepting that Sanders is over the age of 40, however, the court finds that no reasonable juror

could conclude that Sanders has shown that she was either replaced by a substantially younger person or treated differently than a similarly-situated, non-protected employee. Sanders has not alleged that she was replaced after her termination, and the only comparator Sanders has offered is Nicole Foster. However, Sanders does not state Foster's age, and as discussed above, Foster is not a similarly-situated employee. Sanders's unsupported allegations are not evidence, and cannot defeat a motion for summary judgment. Therefore, the court recommends that Baptist's Motion for Summary Judgment be granted as to Sanders's ADEA claim.

### III. RECOMMENDATION

For the above reasons, the court concludes that, viewing the evidence in the light most favorable to Sanders, she has failed to sufficiently establish a *prima facie* case of race or age discrimination. Therefore, it is recommended that Baptist's Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 19, 2015
Date

NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**